Good morning, all. Can the attorneys who are on K.M. please approach the podium and identify yourselves for the record? Ms. Cuso, you were about to have a baby the last time you were here, didn't you? That's right. Assistant State's Attorney Ashley Cuso on behalf of the people of the state of Illinois. Tom McHenry on behalf of K.M.V. Good morning. All right, Mr. McHenry, did you want to reserve time for rebuttal? Two minutes. All right. You can proceed, Mr. McHenry. May it please the court, Keontae challenges solely the terms and conditions of his probation, which on their face would bar him from having any contact, whether in person or via social media with gangs. It also includes guns and drugs. The probation order tracks the statute. Is that correct? With so far as saying that you can't have contact with certain people, correct? So the trial court tracked the letter of the statute, right? So how can we say she erred if she tracked the letter of the statute? Well, the legislature doesn't determine whether or not the judicial question of whether something is permissible or not ultimately rules the day. So, for example, like in Omar F., which is the same juvenile judge, it's virtually the same order. It would also track the statute insofar as it said you could have no contact. But there's already been some dissent with Omar F.'s position. Is that correct? With respect to there's one other published decision, R.H., where the first district also, they were dealing solely with the social media aspect of the order. They did not deal with in-person contact, which as R.H. talks about, that was one of the main focuses in Omar F. We don't even pick a side on this one? Is that what you're saying? No, I don't believe so. With respect to if you want to go to specifically the social media issue, then yes, there is a difference in R.H. versus Omar F. But with respect to other, which is really one of the main concerns, and that's what Omar F. stresses, is that listen, and also this is one reason why we can't just look solely at the language of the statute. These are playing out in communities that have varying amounts of gang presence. So in both Omar F. and also in this case, it's spread of record in the social investigation that Keontae lives in an area that has a high gang presence. There are a lot of guns there and a lot of drugs there. Is there a way that the trial court could have crafted the probation order with being in compliance with the statute and not being overly vague? Yes, Your Honor. One of the important things in J.W., the Illinois Supreme Court case from 2003, that was dealing with what sort of restrictions you can place on somebody as far as geographical location, there they said one of the key components is that the juvenile would need to have some sort of mechanism built in, some sort of understanding that I can pursue legitimate exemptions. So, for example, you could put in the probation order. But that was in the statute in Ray J.W. It is, but critically, J.W. also says that the statute mirrored the constitutional demands. So those were two separate things. It wasn't simply because it was in the statute. So what could be done is that Judge Rivers could say, listen, I recognize you live in an area with a lot of gangs, with all these problems. You need to go to school. Hopefully you're going to get a job. All these other things you're supposed to be doing, I certainly don't want to prevent you from doing any of that. So if there's any question, you think you have a valid reason to play basketball in a night league that's supposed to get kids off the street, if you want to do that and there are other gang members in it, talk to a probation officer, you get a green light there, you're fine. If you don't, then come to the court. And then I'll take the final view on it. That would be a simple way of adding at least some mechanism so that we know that he's not technically constantly in violation of his probation, which leads to arbitrary enforcement. So is there any reason, anything that would have prevented this individual and his lawyer from going back before Judge Rivers? Instead of filing an appeal with the appellate court, couldn't you just go back to the judge? I mean, I would think that, I guess I have no way of knowing, but I think she might have been amenable to that, right? I mean, if someone said, Judge, as we read this, he can't work at McDonald's next to someone who's in a gang. He can't say hello to a gang member in the hallway of a school. If his biology lab partner is a gang member, he's in violation. And the judge, there's at least a decent chance the judge would say, oh, well, that's not what I intended, let me clarify. Is there any reason why that didn't happen here? I'm not sure if this is why it didn't happen, but, you know, Chianti is a 17-year-old. He's in a special education program. You know, what some people might do in his situation might be different than what Chianti might do. Well, I mean, Chianti is in charge of exactly how this case proceeded legally. Chianti wasn't the one saying let's not go back to the trial court and ask for an amendment on our probation order. Chianti wasn't the one saying file a notice of appeal and contest the constitutionality of this statute. That's not his decision. Those are lawyers' decisions. So why wouldn't a lawyer say let's go to the least restrictive manner we can and just ask the judge to modify this order? As to why they didn't, I don't know. They didn't. And just like they didn't in OMRF, and so we're dealing with the now and what we can do now, and, you know, it's really the same judge that's doing these orders in several cases. It would be good if it could be dealt with at that level. So, you know, just like OMRF, when it came down, that was hopefully instructive to that judge. But, you know, going forward, to put the onus on everybody else so that we can now craft these orders as broad as possible so that virtually everybody in those communities are going to be technically violating the terms of their probation. So what would the order have had to say with regard to this that would be in compliance with what you're asking for? Several things. The first thing, you know, as I mentioned, would be having some be clear to the respondents that, first, there are exceptions to this. We recognize that. Your first goal would be go to your probation officer. If you want to engage in something you know, whether it's through school, work, or whatever, extracurricular activities, you're going to have some contact with people who are gang members. Go to your probation officer. That would be the biggest part. I think in JW, if JW, if that had been included, I think it likely would have avoided sort of the most of what was wrong with that. Here, I would say one additional thing that would be helpful would be, you know, in OMRF, they stress that one of the problems is this sort of unintentional or unknowing and otherwise innocuous behavior that that would, you know, lead to a violation of probation. Even if you could add, I mean, right now, the probation order doesn't have anything about knowing, you know, or intentional. So, I mean, technically, you're riding a bus with somebody, and, you know, they start talking to you, and they happen to be a gang member, you don't know it, you're technically violating the probation. So they can even, you know, change some of the language to make it more clear that our intent here is obviously to make sure that, you know, if you're knowingly promoting sort of gang activity or being involved in gang activity, that's an issue, you know. And you're saying the record here supports the notion that this juvenile had, he lived in an area where there were a lot of gangs? The social investigation spreads the record that he lives in the Roseland community on the south side, and it says it's, you know, I can't do the exact quote, but basically this is a high gang presence area. There is a high degree of drugs and gangs. So it spreads the record that this area, he's going to have contact, whether incidentally or otherwise, with gang members just to do the things he's required to do. Well, it says no contact with gangs. It doesn't say with gang members. No. What you suggest is that when somebody who is under this type of order, when he wants to play basketball, he should go to his probation officer and discuss it with his probation officer. Do you understand that when they play basketball, they go to a schoolyard or a playground, and those are pickup games. They don't even know who's going to be there. So how could you go to your probation officer and find out whether that's all right to play in the game because you saw a gang member who was also playing? Well, there are different levels. There's an organization, Strides for Peace, that focuses on at-risk areas in Chicago. One of their programs is the nighttime basketball league. That is more organized. It's not just going to the playground. Most of the games are from the playground or from the schoolyard. Those organized programs are totally different. But they nonetheless exist in those communities. If he wants to participate, he was a part of the AAU organized program. If he can't participate in the schoolyard basketball pickup games because a gang member is going to play, that's being involved with gangs because you're playing basketball and somebody is in a gang. If one of his former gang members calls him and says, hey, let's go play basketball out here, they're not talking necessarily about games or anything, but he goes and plays basketball, I would understand him to be in violation of the terms of the probation. I don't think that's reasonable. But technically, does he know he's a gang member? Yes. Is he going to play basketball? Yes. Are they talking to each other before or after? Sure. That would be a violation of the – I don't see how one could say that because it specifically says no contact with gangs, you could therefore have contact with gang members. Was that the intention of this statute then, that you're not to have any contact with anybody because he's a member of a gang? That you don't be involved in gang activity? Isn't that what this is all about? I think that's a reasonable interpretation of it. However, it says in the statute no contact and it also uses – With gangs. It says gangs. It doesn't say anything about basketball or playing checkers or anything else. It's talking about gangs. We all know what that means. Well, one of the sentencing orders has contact – What should it say as far as you're concerned? What should it say? Well, as I mentioned, one would be first it should have a provision for exception so he knows what to do, how to get around, to get verifications when he can't do it. You could have exceptions in the statute? I mean, is this statute constitutional? This court, this court in OMRF did not address whether or not the statute itself was – Is there a way to modify this probation order without striking down this statute? Absolutely. Yeah, just like in OMRF. They did not strike down the statute in OMRF. They just said it was vague and remanded for modification of probation. Give him some indication of exactly what type of behavior that he'd be in violation for and also some means of finding exceptions for valid uses of it. But also the order itself, one of the orders has no gang contact or activity. So I don't know that at least as the court order is written, there is a distinction made between contact and activity, and they're saying you can't do either of them. So I don't know if, you know, if the view would be that contact is only supposed to be – Okay, so the view would be a gang activity according to you? No. I think that if there's a member who is in the program, so if you're at Strides for Peace and they're marketing themselves to at-risk kids and some of those kids are in gangs, right, and they're playing and they're on a team together, they're having contact with each other. That's separate from the probation order of having activity. I don't think that's reasonable to penalize somebody for doing that, but I didn't write the order. For those reasons, if there are no further questions, we would ask this court to remand with instructions to narrowly tailor the terms of Keante's probation. Thank you. Thank you, Mr. McKinney. Ms. Cusa. Good morning again. I'm Assistant State's Attorney Ashley Cusa on behalf of the people. There is nothing wrong with the probation order in this case that prohibits a 16-year-old self-admitted every-body-killer gang member from having contact with gangs, guns, and drugs. Okay, what about his – just hypothetically, as we know, many times gang members are all in the same gang in a family, the dads, the uncles, the cousins. He has a family reunion and all of his relatives are there. Wouldn't that violate this probation order? It would, and you're talking in terms of a hypothetical. And when we're talking in terms of a hypothetical, we can't use the same as-applied analysis that the minor has raised in this present case. So let me explain why. Counsel here has used the same flawed logic that we see in OMRF to confuse the distinct and separate analyses of facial and as-applied constitutional challenges. And this argument, just like the one that we see in OMRF, lies in the face of well-settled principles of constitutional jurisprudence, and it ignores the simple and straightforward solution to this problem. Because here's the problem with counsel's analysis. He's arguing that the minor's probation conditions were unconstitutional as applied to this minor's own circumstances, but we can't establish what this minor's circumstances actually were. And because there's absolutely – Do you agree that the record shows that he lives in a gang-infested area? Yes. So that's something we know? It's something we know, and perhaps just because – Okay, so if he's in a gang-infested area, can we take from that that he goes to school? He's been ordered to go to school, right? Correct. That was part of the order. So he must go to school, and he sits down in his assigned seat, and sitting right next to him, his biology lab partner, is a gang member. Is he in violation of this order? No, he's not. What if he says hello to him? No. Or pass the – It says no contact. Isn't that contact? No, it's not. What we have to look at is the intent of the legislature in crafting this statute. No, no, no, no, no, no, no. This order says no contact. Forget the statute. The order says no contact. If that – what is he supposed to think that that means? He knows exactly what that means. And contact connotes the ordinary and popularly understood meaning of contact is to have a relationship, to have a connection. Well, so his biology lab partner, he has a relationship with him. He's a gang member. How is that not contact in violation of this probation order? Because even in the library or even in the classroom, it's the minor's connections and relationship with gang members that are problematic. So if he is, in fact, having – has a lab partner, has to have a relationship with this lab partner, and that lab partner is a deeply rooted member of a very dangerous gang in Chicago, this juvenile court is well within its authority to order this minor who's on probation not to have contact with that individual. But the point I was getting to before is these are all in the hypothetical, and we can't expect this court to carefully craft an order or call about special exceptions for circumstances just like this. No, but we can expect the trial court to do so. We can expect the trial court to craft orders where people are on notice on what would cause a violation of probation. Do you believe that this order puts the minor on adequate notice of what he will be in violation for? Absolutely. Absolutely. And the only way that the juvenile court can craft an order to make these special exceptions is if this information is brought to the attention of the juvenile court. So if this minor – Well, the juvenile court knew that he lived in a gang-infested area. Absolutely. So that's why she said don't be around gangs. Don't have contact with gangs. Absolutely. And just because the order of probation may be difficult for this minor to abide by doesn't mean that it's invalid because it's still in this minor's best interest not to have contact with members of a criminal enterprise that caused him to be in this juvenile system in the first place. And the court has narrowly crafted this order as best it could with the evidence that was presented at this sentencing hearing. Wouldn't it have been narrower to put in exceptions? And they don't have to be listed. They could just say, you know, if you find yourself – I'm ordering you to go to school. If you find yourself in a situation when you're doing exactly what I ordered you to do, which is go to school, that requires you to be in contact with a gang member, tell your probation officer or come to me and we'll give you a waiver. And that's what they talked about in the NRAJW case. I'm not saying you have to foresee every circumstance, but you could give at least some safety valve. I mean, doesn't this individual walk around on a daily basis not wanting to go to juvenile detention, wanting to comply with his parole, finding it extremely difficult to comply with this order? No. I think the order is very clear for this minor, and he understands the exact kind of contact and the individuals that he's not supposed to be having contact with. He understands the exact kind of contact? Yes. Yes. Which is what? Which is to actually have a relationship with. To have a relationship with? So if his dad is a member of this same gang, he can't have a relationship with him. Well, again, there might be some very extreme circumstances where very close members of this minor's family are so deeply rooted in the gang that that wouldn't be appropriate for the minor. Where does it say they have to be deeply rooted? I didn't see that in the order. The order said no contact with gangs. Period. Yes. Absolutely. And if the minor truly has... So where does it say they have to have a deep and abiding love and a relationship and they have to have an ongoing contact? It doesn't say any of that. Did the judge give any of those instructions? If you have family members who are gang members, that doesn't count. If you have basketball team members who are gang members, that doesn't count. Did she give him any parameters of exactly what would a violation be? She was very clear in that he was not to have contact with gang members. And I have to emphasize, and you did point this out before, Justice Burke, that the onus here is always on the movement to establish unconstitutionality. Is there a way to modify this order without getting to the constitutionality of the statute? Or is that the only way that we could have this probation order modified, is to rule that the entire statute is unconstitutional? This entire statute is certainly not unconstitutional, and there is no way for us on appeal without a fully developed record and without really knowing what this minor's circumstances are or the situations in which he would need to have some kind of legitimate contact with gang members. There's no way for us to carefully craft a sentencing order that will help this minor reach the goals of his probation, his rehabilitation in this case. And if this minor truly had the need for legitimate gang contact, he had the opportunity at his sentencing hearing to inform the juvenile court, and he was represented by counsel at that time, and under Section 5-710, the minor is allowed to ask the juvenile court to modify his sentence at any time. So he could walk in there today and ask the juvenile court, raise these issues with the juvenile court. And because he's failed to do this, the juvenile court obviously was never informed of any reason that he needed to have gang contact and never had the opportunity to craft a good order. So in other words, the minor here, what he's done is he's bypassed the proper procedure in this case, and he's now asking this court to strike the conditions of his probation based on these imaginary circumstances that, if true, might make the conditions of his probation unconstitutional. But this is not a valid or a proper constitutional analysis because without an evidentiary record, his as-applied challenge is premature. So... Why do you keep referring to an as-applied challenge? This isn't a statutory... This isn't... He's not challenging the statute here, right? He's challenging the order, and he's saying, the order as applied in my specific circumstance is unconstitutional to me. And what he's done is really confusing. It's hard when you read the briefs to understand because he's framed his as-applied arguments in a manner that sounds a lot like an over-breath challenge to the facial validity of a statute, and that's an entirely separate analysis. Because when we look at a facial challenge, we look at the statute in the context of all of its applications, and that includes hypotheticals as well. And a facial challenge is... fails if there are valid applications of the statute. And as this court... Okay, but the statute's not being challenged here, right? He's not challenging. It's... I'm sorry. It is distinguishing between the two? It's... It's... My apologies. Usually when we're talking in the terms of facial, because it's a little bit confusing what we're doing. But if we're talking in terms of facial, it's usually with respect to the statute. But as Justice Burke pointed out, this order did track the letter of the law as far as the statute. But this order here, as imposed, has numerous valid applications because there's simply no more compelling reason... interest, rather, than to keep a child who's been adjudicated delinquent away from a criminal enterprise that's known to exploit teenagers. We see the same sort of flawed and confusing analysis with respect to his vagueness argument. And to prevail on an as-applied challenge to a vagueness argument, the movement has to demonstrate that the restriction was vague as applied to the conduct for which he was prosecuted. There wasn't a violation of probation here. All of this is in the hypothetical. And that's why these as-applied constitutional challenges were not raised properly. So, again, if we look at vagueness from a facial challenge, which was not raised by this minor, but sounds in a facial challenge due to the nature of the hypotheticals, we have to look at two things. We have to look at whether a person of ordinary intelligence had a fair warning as the prohibited conduct. And when we think about that, we have to consider whether the words that were used in the order had the ordinary and popularly understood meanings. And we also have to give consideration to the legislative objective and the evil that this statute was designed to remedy. I agree. It doesn't seem like the problem with this order, if there is a problem, is that it's vague. I don't think contact is vague, but I think contact includes everything. And every time you talk about contact, you start modifying it with words like relationships and deeply rooted, which is not what the order says. Contact is, I touch the justice on the arm, I've contacted her. I say hello, I've contacted her. I brush up shoulders with her passing her, I've contacted her. I call her on the phone. I e-mail her. There are all sorts of things that contact can mean, right? Aren't all of those things covered by this order? You're absolutely right. There are actually two dictionary definitions of the term contact, and one involves the contact that I was talking to you about, associating, connecting, having a relationship, getting in communication with. Is that what this means? This is exactly what this means. It doesn't mean the physical contact. Surely here the legislature was not concerned with the minor physically touching another gang member. So it was a communicative thing? Absolutely, because these relationships that the minor forms with other gang members, this is what encourages the minor to keep engaging in the same unlawful conduct that brought him here today, and that defeats the purpose of his probation. There's a court, the juvenile court. I'm sorry. So let's drill down on this. So what does it mean? It means you can't communicate? To associate, to communicate, to have a relationship. You can't associate. Yes, and that would, I agree, include text messaging. Because associate is a word that the judge could have put in the order. She said contact. Yes, and that complies with the statute. Yeah, okay, fine, the statute. But this order is what governs his conduct. He's walking around today thinking, I do not want to get violated. I do not want to go into juvenile detention. I'm trying to comply. A reasonable reading of this would be that he can't even so much as say hello to someone who's in a gang, right? It's not a reasonable. It's not reasonable. No, that would not be a reasonable interpretation, because we have to look at the legislative objective of the order, the statute that's authorizing the order. And does he have a choice for us to do that too, look at the legislative history to determine what conduct is prohibited and which is not? Again, he was represented by counsel, but this minor was very aware of exactly what he wasn't supposed to do. He knew what gang members were. He identified himself as a gang member. And in the terms, when talking to a teenager, it's a lot easier for this court to say, you are not to have contact with any gang member, than to get into some sort of legal analysis or some big or different words that the minor has to engage in, again, a legal analysis to figure out what the court is saying. The court looked right at this minor and said, no contact with gangs, guns, or drugs. And he knew exactly what the juvenile court meant when she said that. Well, after Omar F., Judge Rivers, as I'm sure you are aware, changed the order. Yes. And we have another case coming up. I'm sure you know that. Maybe you're arguing it. I don't know. And she changed it from no contact with gangs to no illegal gang activity. I mean, that's a way to modify it, right? I don't believe that actually solves the problem. Because what that order does is it makes it a violation of that minor's probation to engage in some kind of criminal conduct that's actually already, he's already prohibited from engaging in criminal conduct pursuant to his probation. So in essence, the result of Omar F.'s flawed analysis caused the court below, who was attempting to abide by Omar F., to enter an order that was somewhat redundant and, if anything, perhaps too narrow. So it might have been an overcorrection. But there are ways that it could be modified, certainly. Certainly. And it can absolutely be modified to better serve the minor's interests if this juvenile court has the information and the facts that it needs to properly tailor or craft this judgment. So then aren't we going into a waiver or forfeiture argument saying he never brought this up to the trial court, so therefore you kind of blew it? Yes, yes. What the Constitution demands here is the movement established on constitutionality. And here he had an obligation to raise these issues, and including this constitutional challenge to raise it first in the trial court and to bring it to the trial court's attention and say, this is unconstitutional as applied to my situation because of X, Y, and Z. But he didn't do that. And if he had, the juvenile court could have engaged in a fact-finding process and left us right now with a record where we could better determine what the minor's situation is. But before a judge imposes conditions, I think the juvenile court does look into what's going on in the minor's life, right? There is a social investigative report. Absolutely. There is a very detailed social investigation report. She had a pretty good idea already, right? Correct. I grant you it does not appear in the record that the counsel for the juvenile brought these things up, but it's not as if she made this in a vacuum and had no idea what she was doing, is it? Exactly. She was aware of the minor's familial situation, which as we see in the record there is no evidence whatsoever that anyone in the minor's family was a member of the gang. There's no evidence anyone in his school that he had a job or that anyone in his workplace was a member of the gang. And the truth of the matter is the juvenile court could ask an infinite number of questions of this minor, but the only individual who has the knowledge and who knows how this restriction might impact his own specific circumstance is the minor himself. So what I want to leave you with today is that this minor has the ability to return to juvenile court to establish any facts that make this gang restriction unconstitutional as applied to him, but until he does so, this record fails to support his as-applied constitutional challenges because we cannot expect the juvenile court to carve out exceptions to the minor's conditions of probation if this minor fails to inform the juvenile court of facts warranting such an exception. So for these reasons... Did the minor at NRAJW inform the court of the reasons for exceptions why he would want to go back into South Elgin after he was kicked out of the entire town by the judge? I'm not aware of the specific facts, what happened at the trial level at NRAJW, but that case is distinguishable from the present one because what the Illinois Supreme Court found so problematic with NRAJW is that the court's order didn't comport with the statute. The statute required... That wasn't what they had... You're right, it didn't, but as your colleague on the other side mentioned, they said that the requirement of the need for exceptions also followed the constitutional requirement. Ultimately, they said there was a constitutional problem, not a statutory one, and the constitutional problem was there was no exception. He was kept out of South Elgin completely. And you're absolutely right, but we're dealing with a banishment, an order that's restricting the minor from entering an entire city where his family is, where his school is, where his primary care physician is, for any reason. That is not the same as limiting a minor who's on probation from having contact with gang members when he himself is a known gang member and is likely involved in this case because of that very conduct. So if there are no other questions from this Court, we would ask that for all the reasons discussed and those stated in our brief that you affirm the minor's sentencing order. Thank you, Ms. Puzo. Mr. McHenry? Just briefly, I'd like to mention, I mean, you know, the concept of banishment that was just talked about now, that's so different than the present case. It sort of flies in the face of how these communities work. I mean, as was spread of record in the social investigation, this is an area that has a high gang presence. So, you know, yes, it's not technically banishment, but the reality is this kid is going to live in a world where he has contact with gang members on a consistent basis. There's no way around that. To pretend otherwise is simply fictional. As far as then, too, you know, what arguments are being made or not, you know, whether our briefs were confusing or not, it tracked OMRF, which basically resolves the issue on non-constitutional grounds. But it certainly does address constitutional concerns as well. But as everyone knows, you know, this court should decide the case on non-constitutional grounds if it can. There is a requirement that all probationary conditions and restrictions must be reasonable. In this case, they're not reasonable, as OMRF found, because they're overly broad to the point where they don't provide sufficient notice or means by which the respondent can find valid exemptions. So there are all these reasons. That makes it unreasonable. It can be struck down on that basis alone. There's no need for this court to say, well, this is a facial challenge and, you know, this is an unconstitutional statute or probationary order. That's not what we're asking for. As far as the forfeiture goes, as Your Honor mentioned, in JW it wasn't brought up before. In OMRF it wasn't brought up before. There's strong language in OMRF as to why this is a substantial problem with the system breaking down, the judicial integrity. We would hold by that language and ask this court to do the same. Thank you very much. Thank you, Mr. McKinnon. All right. The court will take the matter under advisement and will issue an order as soon as possible.